U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2014 SEP 19 P 2:32
JON W. SANFILIPPO
CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

MALIBU MEDIA, LLC,

    Plaintiff,

vs.

JOHN DOE SUBSCRIBER ASSIGNED IP ADDRESS 67.52.234.131,

    Defendant

Case No.: 2:14-cv-00932-LA

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER

"John Doe"[1] (IP Address 67.52.234.131) ("Doe Defendant"), hereby moves to dismiss. In the alternative, Doe Defendant moves to quash the subpoena issued to his/her internet service provider, or issue a protective order protecting same.

### I.     FACTUAL BACKGROUND

Plaintiff filed its Complaint alleging violations of its purposed copyrights. After filing its Complaint, Plaintiff sought leave to conduct discovery. In pursuit of identifying information for such Defendants, Plaintiff issued a subpoena to the Defendant's ISP, Time Warner Cable. In issuing the subpoenas, Plaintiff primarily relies upon an Internet Protocol (IP) address to identify alleged infringers. Doe Defendant was identified by IP address 67.52.234.131. Prior to disclosing Defendant's identifying details, Time Warner Cable provided Defendant with notice of the Plaintiff's subpoena.

Plaintiff has a history of filing over "1,100 copyright lawsuits in 2013" and has "Accounted for Nearly 40% Of All Copyright Lawsuits" in 2014.[2] The evidence in these cases is obtained in manners referred to as "abusive and seriously questionable practices."[3] This has also led to sanctions[4] against Plaintiff initially in the

---

[1] John Doe is making a special, limited appearance only; this motion is not to be construed as a general appearance by John Doe. John Doe has not been subject to service of process in this action and does not intend to waive service of process.

[2] *See also* Mike Masnick, *One Single Port Copyright Troll, Malibu Media, Accounted For Nearly 40% Of All Copyright Lawsuits This Year*, TechDirt (May 19, 2014), at https://www.techdirt.com/articles/20140517/06552727268/one-single-porn-copyright-troll-malibu-media-accounted-nearly-40-all-copyright-lawsuits-this-year.shtml

[3] *See also* Mike Masnick, *International Men of Mystery: How Discredited German 'Anti-Piracy' Company May Secretly Be Behind Malibu Media's Copyright Trollery*, TechDirt (June 4, 2014), at https://www.techdirt.com/articles/20140603/18021127448/international-men-mystery-how-discredited-german-anti-piracy-company-may-secretly-be-behind-malibu-medias-copyright-trollery.shtml

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER - 1

Western District of Wisconsin in over 10 cases, and more recently 3 cases in Eastern District of Wisconsin from the Honorable Judge Rudolph Randa.

A blog post[5], from April 21, 2014 (**copy at Exhibit "1"**) suggests that the company by which the Plaintiff's witness Tobias Fieser is employed, IPP International UG, is related to another company Guardaley. Guardaley's presentation[6] (**copy at Exhibit "2"**) details on page 9 (under the Reporting section) that the APMC (Anti-Piracy Management Company) focuses its efforts on infringers as "*seeders,*" which are defined as having more than 100 seeds, and "High Profile Clients." Exhibit "2" continues with defining "APMC is focusing on high-profile clients (i.e., who are wealthy & likely to settle)." Additionally, for works that APMC may not have a copyright holder, the APMC monitors BitTorrent traffic in an attempt to determine possible infringers that are "High Profile Clients" and actively seeks out copyright holders, according to page 19 of Exhibit "2" focusing on settlements between $2,500 and $7,500.

## II. DEFENDANT SHOULD BE DISMISSED PURSUANT TO Fed. R. Civ. P. 11(b)(1)

On March 20, 2014, in a similar case, the Honorable Ursula Ungaro of the Southern District of Florida entered an order dismissing Malibu Media's Case No. 1:14-cv-20213-UU [Doc. 11] (Copy at **Exhibit "3"**). In that case, Judge Ungaro had, sua sponte, issued a show-cause order[7] requiring Malibu Media to show good cause why the Court should reasonably rely on the use of geolocation or other technologies to establish the defendant's identity. Malibu Media responded, and, after considering said response, Judge Ungaro entered an order dismissing the case, explaining:

> Plaintiff has not shown how this [Mr. Fieser's] geolocation software
> can establish the identity of the Defendant. There is nothing that
> links the IP address location to the identity of the person actually
> downloading and viewing Plaintiff's videos, and establishing
> whether that person lives in this district. . . . Even if this IP address
> is located within a residence, the geolocation software cannot

---

[4] See also Mike Masnick, *Malibu Media Sanctioned Again For Bogus Copyright Abuse & Intimidation*, TechDirt (December 13, 2013), at https://www.techdirt.com/articles/20131213/15210325563/malibu-media-sanctioned-again-bogus-copyright-abuse-intimidation.shtml
[5] See also SJD, *Devil's cookbook: Guardaley's presentation*, Fight Copyright Trolls (April, 21, 2014) at http://fightcopyrighttrolls.com/2014/04/21/devils-cookbook-guardaleys-presentation/
[6] See also SJD, Anti-Piracy Management Company Presentation, Fight Copyright Trolls (April 21, 2014) at http://fightcopyrighttrolls.com/discussions/keith-lipscomb-and-his-shakedown-enterprise/anti-piracy-management-company-presentation/
[7] Doc. 7 in 1:14-cv-20213-UU (March 5, 2014).

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER - 2

identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright.

Exh. "1." Judge Ungaro also files show-cause orders in at least two other Malibu Media cases, Case Nos. 0:14-cv-60681-UU [Doc. 5] and 0:14-cv-60682-UU [Doc. 5], after which Malibu Media filed notices of voluntary dismissal. Both cases were closed on March 27, 2014.

Next, on April 4, 2014, in another *Malibu Media v. Doe* case, Case No. 1:14-cv-20216-FAM [Doc. 8], Chief Judge Federico A. Moreno entered another order to show cause, therein citing to and following Judge Ungaro's order, and requiring Malibu Media to show cause why the court should rely on geolocation services to establish the Defendant's identity and location in this district.

Chief Judge Moreno's order was a deviation from at least one previous order he had entered in a similar case, where he had, prior to the entry of Judge Ungaro's order, granted Malibu Media's motion for early discovery, such as one filed on January 31, 2014, in Case No, 1:14-cv-20218-FAM. In other words, Judge Ungaro's order was a game changer.

Judges Ungaro and Moreno are not alone in finding that cases filed against IP subscribers are not sufficient to identify an individual infringer. In January, a district judge in Seattle entered an order of dismissal because "simply identifying the account holder associated with an IP address tells us very little about who actually downloaded *Elf-Man* using that IP address." *Elf-Man, LLC v. Cariveau*, 2014 WL 202096, No. C13-0507RSL (Jan. 17, 2014). One reason is that, with each Defendant identified only by an IP address, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous." In *Re: BitTorrent Adult Film Copyright Infringement Cases*, No. 11-cv-03995, 2012 WL 1570765, 2012 U.S. Dis. LEXIS 61447 (E.D.N.Y. May 1, 2012). Due to the increasing popularity of wireless routers, identifying a computer user by an IP address is unlikely, as different family members, visitors, or even neighbors could have performed the alleged downloads. *Id.* One court observed that as many of "30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material." *Digital Sin, Inc.* v. Does 1-176, 2012 WL 263491 *3 (S.D.N.Y. Jan. 30, 2012).

Doe Defendant would encourage review of this and other cases regarding the Plaintiff as it appears that the Plaintiff may be misusing the Court to intimidate defendants who may or may not be guilty into quickly settling due to the nature of the material. It is typical in situations where intellectual property infringement is occurring or has occurred, that the owner of said content utilizes means to help protect their intellectual property from future infringements. For example, serving Digital Millennium Copyright Act ("DMCA") notices to those offering up the material or links to the material such as was done in a case involving Prince Rogers Nelson, case number 3:14-cv-00273-EDL, with specific references on page 7 line 28 and page 15 line 22.

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER - 3

In reviewing cases from the Plaintiff, it does not appear that the Plaintiff has ever taken any measures to try and protect their material against current and future infringements aside from mass filing of lawsuits against subscribers. For example, the Plaintiff has not taken actions against the places where the content or links to the content are stored and/or hosted, such as serving DCMA, as is normally done in similar cases such as was done with Prince Rogers Nelson. It is Doe Defendant's belief that he/she was targeted largely in part because Plaintiff or parties acting on behalf of Plaintiff believe Doe Defendant is affluent and/or otherwise might easily settle without lengthy court proceedings thus avoiding embarrassment due to the nature of the material.

Several courts have even gone so far as to suggest that Rule 11 sanctions[8] might apply in cases involving similar fact patterns. See <u>Arista Records, LLC v. Does 1-27</u>, No. 07-162, 2008 U.S. Dist. LEXIS 6241, 2008 WL 222283, at *6 n.5 (D. Me. Jan. 5, 2008); see also <u>K-Beech</u>, No. 11-00469, slip op. at 4-5. The <u>K-Beech</u> court addressed the issue in some detail:

> "The Court also finds that the plaintiff should be required to show cause why certain conduct does not violate Rule 11 of the Federal Rules of Civil Procedure. . . The plaintiffs sought, and the Court granted, expedited discovery allowing the plaintiffs to subpoena information from ISPs to identify the Doe defendants. [T]he plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly. . . demanding [thousands of dollars] in compensation to end the litigation. . .This course of conduct indicated that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendant' personal information and coerce payment from them. The plaintiff' conduct in these cases indicates an improper purpose for the suits."

<u>Id</u>. At 4-5. The conduct explained in the <u>K-Beech</u> matter is similar to the conduct occurring here. Plaintiff's attorneys regularly send demand letters or make demand calls to identified defendants demanding as much as $5,000 to settle the case to avoid the specter of a lawsuit. Upon receipt of such letters, recipients are faced with the unenviable position of potentially defending an expensive lawsuit on the merits or paying a smaller amount

---

[8] Doe Defendant is not seeking sanctions against Plaintiff or its counsel, but feels obligated to point out that several courts have considered Rule 11 sanctions in similar scenarios.

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER - 4

of money to "make it go away." As Judge Gibney explains in K-Beech, coercion of payments from unsuspecting Doe Defendants is an "improper purpose" for such suits. K-Beech, No. 11-00469, slip op. at 4-5.

The case should be dismissed pursuant to Fed. R. Civ. P. 11(b)(1), the Plaintiff merely targeted an IP address which they then proceeded to accuse the subscriber of wrongdoing. They have not even attempted to help protect their intellectual property, and based on history see Doe Defendant as an easy target for a settlement.

### III.     THE SUBPOENA SHOULD BE QUASHED

Even where Doe Defendant is not otherwise dismissed from this matter, the subpoena issued to the Internet Service Provider should be quashed.

Fed. R. Civ. P. 45(c)(3)(A)(iv) provides that no person shall be subject to a subpoena that imposes an "undue burden." Furthermore, the Federal Rules dictate that a court may "make any order which justice requires to protect a part or person from annoyance, embarrassment, oppression, or undue burden or expense" upon showing of good cause. Fed. R. Cif. P. 26(c). In determining an "undue burden," a court generally examines "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." Flatow v. Islamic Republic of Iran, 196 F.R.D. 203, 206 (D.D.C. 2000), vacated in part and affirmed in part on other grounds, 305 F.3d 1249 (D.C. Cir. 2002).

First and foremost, Plaintiff ignores the fact that "IP subscribers are not necessarily copyright infringers." VPR Internationale v. Does 1-1017, 2011 U.S. Dis. LEXIS 64656 (C.D. Ill. Apr. 29, 2011). The VPR Internationale court goes on to explain that while "an IP address might actually identify an individual subscriber and address the correlation is still far from perfect. . .The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop (or other mobile device), a neighbor, or someone parked on the street at anygiven moment." Id. Requesting subscriber information that may or may not be the alleged copyright infringer annoys the non-infringer and almost certainly leads to attorney's fees and costs, regardless of whether the subscriber infringed the work. In addition, the request burdens a third party ISP with a request for information about an act that may or may not be actionable against Doe Defendant.

More importantly, as discussed, any release of information to the Plaintiff will undoubtedly lead to demand letters sent to Doe Defendant. These letters regularly allege copyright infringement and demand substantial cash payments to avoid the specter of further litigation. Plaintiff should not be granted a license to burden or harass alleged infringers in this manner given the fact that many if not most of the ISP subscribers are not infringing the Plaintiff's works. The subpoena referencing Doe Defendant should accordingly be quashed or issued a protective order.

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER - 5

## IV. CONCLUSION

Although I do not prefer to file this motion in an anonymous fashion, i.e. a named IP address, I am fearful that the Plaintiff, or parties working on behalf of the Plaintiff, will misuse this information to further harass and discredit me.

Given all the foregoing, Doe Defendant should be dismissed. Alternatively, the subpoena should be quashed or be issued a protective order.

Respectfully Submitted,

John Doe Subscriber Assigned
IP Address 67.52.234.131

JOHN DOE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 11(B)(1) OR MODIFY SUBPOENA OR ENTER PROTECTIVE ORDER - 6